# EXHIBIT B

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION-CIVIL ACTIONS BRANCH

**ERIKA VANDERBEND**
c/o Washington Legal Group, LLC
1001 Connecticut Ave NW #1138
Washington, District of Columbia 20036

2026-CAB-004671

      **Plaintiff,**
                                  Civil Actions No. _____

v.

**UNITED STATES DEPARTMENT
OF EDUCATION,**
400 Maryland Avenue, SW
Washington, DC 20202,

**TRANS UNION, LLC,**
c/o Corporation Service Company
1156 15th St NW #605
Washington, DC 20005,

**EXPERIAN INFORMATION SOLUTIONS, INC.,**
c/o C T Corporation System
1015 15th St NW #1000
Washington, DC 20005,

**EQUIFAX INFORMATION SERVICES, LLC,**
c/o Corporation Service Company
1156 15th St NW #605
Washington, DC 20005, and

      **Defendants.**

### COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, **ERIKA VANDERBEND,** by and through undersigned counsel, brings this Complaint against Defendants United States Department of Education ("USDE"), Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian") and Trans Union, LLC ("Transunion"), she alleges as follows:

1

1.      This action is brought pursuant to the Federal Fair Credit Reporting Act (hereinafter "FCRA") 15 U.S.C. §1681 et seq.

2.      This Court has jurisdiction under 15 U.S.C. § 1681p.

3.      Plaintiff Erika Vanderbend is a natural person and is a "consumer" as that term is defined at 15 U.S.C. § 1681a(c).

4.      Defendant United States Department of Education (hereinafter, "USDE") is a federal agency located in the District of Columbia. USDE is responsible for administering federal student loan and grant programs in the United States. USDE furnishes consumer credit information on student loa borrowers to consumer reporting agencies and is a "furnisher" governed by FCRA at 15 U.S.C. § 1681s-2.

5.      Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties for monetary compensation and uses interstate commerce to prepare and/or furnish the reports. Accordingly, Equifax is a "consumer reporting agency" (hereinafter, "CRA") as that term is defined at 15 U.S.C. § 1681a(f).

6.      Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties for monetary compensation and uses interstate commerce to prepare and/or furnish the reports. Accordingly, Experian is a CRA as that term is defined at 15 U.S.C. § 1681a(f).

7.      Defendant Trans Union regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties for monetary compensation and uses interstate commerce to prepare and/or furnish the reports. Accordingly, Trans Union is a CRA as that term is defined at 15 U.S.C. § 1681a(f).

2

8.    The CRAs are, and have been, reporting several inaccuracies, including debts furnished by defendant USDE and non-parties Capital One N.A. ("CONA"), Comenity, JPMorgan Chase Bank, ("JPMCB"), Jefferson Capital Systems ("JCAP"), Midland Credit Management ("MCM"), and Portfolio Recovery Associates ("PRA").

*USDE Student Loan Tradelines*

9.    USDE and the CRAs are reporting several student loan accounts to Ms. Vanderbend's credit file and credit reports.

10.    The information reported in the tradelines is inaccurate and incomplete.

11.    For several accounts the Defendants report that Ms. Vanderbend is obligated to make payments but failing to do so when those accounts have been transferred to another entity and there is no obligation pay.

12.    For accounts that are being treated as in collections, the Defendants have failed to include the name of the original student loan lender or any other information—e.g. account number, open date, payment history—that relates to the student loan.

13.    The CRAs should have easily identified the errors and corrected the Payment History and Status of the accounts before including USDE's accounts into Ms. Small's credit file and reports.

14.    Ms. Vanderbend disputed the USDE accounts with the CRAs.

15.    USDE received notice of Ms. Vanderbend's disputes by way of an electronic dispute form—called Automated Consumer Dispute Verification ("ACDV") form—that that the CRAs forwarded to USDE.

16.    USDE processed Ms. Vanderbend's disputes by checking the information in the CRAs' files to make sure that the information matched up with the information that it was furnishing to the CRAs.

3

17. USDE did not investigate any of Ms. Vanderbend's disputes with the goal of verifying the accuracy and completeness of the disputed information.

18. Instead, USDE merely sought to assure the information that it previously furnished to the CRAs was being reported *consistently* by the CRAs <u>regardless</u> of the accuracy or completeness of that information.

19. The CRAs did not investigate Plaintiff's disputes.

20. Instead of doing an investigation, the CRAs forwarded Plaintiff's disputes to USDE and waited for USDE to respond to the disputes.

21. USDE conveyed its dispute results to the CRAs and the CRAs accepted USDE's dispute results without considering the merits of Ms. Vanderbend's disputes.

### *Discover Card Tradeline*

22. In March 2022, Ms. Vanderbend obtained a credit card with Discover Card.

23. Capital One ("CONA") acquired the Discover Card credit card in 2025

24. For her credit card with Discover, Ms. Vanderbend has a monthly payment obligation of $285.

25. From May 2024 to March 2026, Ms. Vanderbend has timely made her $285 monthly payment obligation to CONA.

26. There has been no past due amount on the Discover Card during the months of April 2024 to March 2026.

27. Despite Ms. Vanderbend's timely payments each month, CONA has reported to the CRAs that she has not made any payment(s) on the account during the months of April 2024 to March 2026.

28. Further, CONA has reported to the CRAs that the Discover Card account is uncollectible and does not receive payments.

4

29. Ms. Vanderbend disputed the CONA account with the CRAs.

30. CONA received notice of Ms. Vanderbend's disputes by way of an ACDV that the CRAs forwarded to CONA.

31. CONA processed Ms. Vanderbend's disputes by checking the information in the CRAs' files to make sure that the information matched up with the information that it was furnishing to the CRAs.

32. CONA did not investigate any of Ms. Vanderbend's disputes with the goal of verifying the accuracy and completeness of the disputed information.

33. Instead, CONA merely sought to assure that the information that it previously furnished to the CRAs was being reported *consistently* by the CRAs regardless of the accuracy or completeness of that information.

34. The CRAs did not investigate Plaintiff's disputes.

35. Instead of doing an investigation, the CRAs forwarded Plaintiff's disputes to CONA and waited for CONA to respond to the disputes.

36. CONA conveyed its dispute results to the CRAs which accepted CONA's dispute results without considering the merits of Ms. Vanderbend's disputes.

*Unpaid Charge-Off Accounts*

37. Each of the CRAs repeort that Ms. Vanderbend has an unpaid charge-off account with JPMCB, CONA and Comenity.

38. Trans Union disclosed a credit file to Ms. Vanderbend that did not include Scheduled Payment Amount, Charge-Off Amount, Payment Received, and Date of First Delinquency.

39.    Experian disclosed a credit file that did not include a Scheduled Payment Amount, Date or Amount for the Last Payment, Closed Date and did not include the Date of First Delinquency.

40.    Equifax disclosed a credit file that did not include an Actual Payment Amount for the last payment amount, the Closed Date or Scheduled Payment Amount.

41.    Sometime following the charge-offs, both CONA and Comenity sold their debts to a debt purchaser.

42.    Despite no longer having any involvement, much less ownership of the debts, Equifax and Experian continue to report that Ms. Vanderbend has an obligation to satisfy the debts with Comenity and CONA.

43.    Trans Union on the other hand, reports that the debts have been sold and that the furnishers can no longer collect on these accounts.

44.    However, as noted in paragraph 38, Trans Union omits the Scheduled Payment, Charge-Off Amount, Payment Received and Date of First Delinquency.

45.    Equifax did not disclose the Actual Payment Amount for the last payment amount, the Closed Date or Scheduled Payment Amount to Ms. Vanderbend despite being in possession of the information—which the subject furnishers provided to Equifax—at the time of Equifax's file disclosure to Ms. Vanderbend.

46.    Experian did not disclose the Scheduled Payment Amount, Date or Amount for the Last Payment, Closed Date and the Date of First Delinquency to Ms. Vanderbend despite being in possession of the information—which the subject furnishers provided to Experian—at the time of Equifax's file disclosure to Ms. Vanderbend.

47.    Trans Union did not disclose the Scheduled Payment, Charge-Off Amount, Payment Received and Date of First Delinquency to Ms. Vanderbend despite being in

6

possession of the information—which the subject furnishers provided to Trans Union—at the time of Equifax's file disclosure to Ms. Vanderbend.

48.     Each CRA knows the information they withheld is important to consumers because industry guidelines explicitly inform CRAs that the Scheduled Monthly Payment, Charge-Off Amount, Date of the First Delinquency, Date of the Last Payment and Closure Date should be reported when reporting an account that is unpaid and charged off.

49.     Although all CRAs fail to disclose the Scheduled Monthly Payment, at least one CRA discloses information omitted from the credit files of the others.

50.     Upon information and belief, the CRAs have a defect in their system that prevents them from disclosing the required information and refuses to correct the defect.

51.     The CRAs are aware that their credit file disclosures are not compliant with the statutory obligations of the FCRA but have no regard for complying with the FCRA because they prioritize maximizing their profits, and will not be impeded by the FCRA, industry standard or any condition that may constrain their goal to maximize profits.

### JCAP, MCM and PRA Collections Accounts

52.     JCAP, MCM and PRA are reporting debts to Ms. Vanderbend's credit file with each of the CRAs.

53.     While Experian and Trans Union are reporting that the debts are collection accounts and identify a purported original creditor, Equifax is reporting that the debts are credit accounts and do not identify an original creditor.

54.     Ms. Vanderbend does not owe money to JCAP, MCM or PRA.

55.     Ms. Vanderbend requested information on the debts from JCAP, MCM, and PRA but none of them could establish she owed a debt to them.

56. JCAP, MCM and PRA are unreliable sources of information and the CRAs are keenly aware that they are prone to report that a debtor owes a debt that is not owed.

57. Despite being aware of the unreliability of their reporting, the CRAs treat information furnished by JCAP, MCM and PRA in the same fashion that they treat furnishers with a much better track record of furnishing accurate information.

58. Ms. Vanderbend disputed the collection accounts with the CRAs.

59. With respect to MCM and PRA, the CRAs should have immediately deleted the collection accounts following Ms. Vanderbend's dispute. Both MCM and PRA are notorious for reporting debts that are not owed. In 2015 the Consumer Financial Protection Bureau sued the debt collectors for collecting unsubstantiated debt, collecting on debts without providing required documentation and disclosures to consumers, suing or threatening legal action against consumers without offering or possessing required documentation, and suing to collect on debt outside the statute of limitations. They also failed to properly investigate and resolve consumer disputes about the company's credit reporting.[1] And in 2023, "[a]fter getting caught red-handed in 2015, Portfolio Recovery Associates continued violating the law through intimidation, deception, and illegal debt collection tactics and lawsuits.[2]

60. JCAP, MCM and PRA received notice of Ms. Vanderbend's disputes by way of an ACDV that the CRAs forwarded to the debt collectors.

---

[1] https://www.consumerfinance.gov/archive/newsroom/cfpb-takes-action-against-the-two-largest-debt-buyers-for-using-deceptive-tactics-to-collect-bad-debts/

[2] https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-portfolio-recovery-associates-to-pay-more-than-24-million-illegal-debt-collection-practices-reporting-violations/

61. JCAP, MCM and PRA failed to conduct a reasonable investigation of Ms. Vanderbend's dispute and represented to the CRAs that the disputed information was accurate based on their faulty investigation.

62. Instead of investigating Ms. Vanderbend's disputes, the CRAs waited for and adopted the dispute results of JCAP, MCM and PRA.

63. Because the CRAs parroted the debt collectors' dispute results and did no investigation of their own, the CRAs failed to delete the errant collection accounts

## COUNT I – NEGLIGENT VIOLATION(S) OF FCRA

64. Plaintiff incorporates by reference paragraphs 1 through 63 as fully stated herein.

65. The CRAs negligently failed to comply with 15 U.S.C. § 1681e(b)'s requirement to utilize reasonable procedures to prepare credit reports with maximum accuracy.

66. The CRAs negligently failed to comply with 15 U.S.C. § 1681g's requirement to disclose all information in Plaintiff's credit file.

67. The CRAs negligently failed to comply with 15 U.S.C. § 1681i's requirements for reasonably investigating Plaintiff's dispute and considering all relevant information in the dispute.

68. The CRAs negligently failed to comply with 15 U.S.C. § 1681i's requirements for correcting inaccurate or incomplete information.

69. The CRAs negligently failed to comply with 15 U.S.C. § 1681i's requirements for modifying or deleting inaccurate, incomplete or unverifiable information.

70. The CRAs negligently failed to comply with 15 U.S.C. § 1681i's requirements for adding and/or including Plaintiff's statement of dispute.

9

71.     USDE negligently failed to comply with 15 U.S.C. § 1681s-2(b)'s requirements for reasonably investigating and considering all relevant information from the CRAs' notice of dispute.

72.     USDE negligently failed to comply with 15 U.S.C. § 1681s-2(b)'s requirements for correcting inaccurate or incomplete information.

73.     USDE negligently failed to comply with 15 U.S.C. § 1681s-2(b)'s requirements for modifying deleting inaccurate, incomplete or unverifiable information.

74.     As a result of the Defendants' failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

75.     Plaintiff requests actual damages, costs and attorney fees in amount of $50,000 or more pursuant to 15 U.S.C. § 1681o(a).

### COUNT II – WILLFUL VIOLATION(S) OF FCRA

76.     Plaintiff incorporates by reference paragraphs 1 through 63 as fully stated herein.

77.     The CRAs willfully failed to comply with 15 U.S.C. § 1681e(b)'s requirement to utilize reasonable procedures to prepare credit reports with maximum accuracy.

78.     The CRAs willfully failed to comply with 15 U.S.C. § 1681g's requirement to disclose all information in Plaintiff's credit file.

79.     The CRAs willfully failed to comply with 15 U.S.C. § 1681i's requirements for reasonably investigating Plaintiff's dispute and considering all relevant information in the dispute.

10

80.    The CRAs willfully failed to comply with 15 U.S.C. § 1681i's requirements for correcting inaccurate or incomplete information.

81.    The CRAs willfully failed to comply with 15 U.S.C. § 1681i's requirements for modifying or deleting inaccurate, incomplete or unverifiable information.

82.    The CRAs willfully failed to comply with 15 U.S.C. § 1681i's requirements for adding and/or including Plaintiff's statement of dispute.

83.    USDE willfully failed to comply with 15 U.S.C. § 1681s-2(b)'s requirements for reasonably investigating and considering all relevant information from the CRAs' notice of dispute.

84.    USDE willfully failed to comply with 15 U.S.C. § 1681s-2(b)'s requirements for correcting inaccurate or incomplete information.

85.    USDE willfully failed to comply with 15 U.S.C. § 1681s-2(b)'s requirements for modifying deleting inaccurate, incomplete or unverifiable information.

86.    As a result of the Defendants' failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

87.    Plaintiff requests actual damages, costs and attorney fees in amount of $500,000 or more pursuant to 15 U.S.C. § 1681n(a).

## PRAYER FOR RELIEF

WHEREFORE, your Plaintiff demands judgment for actual, statutory and punitive damages against Defendants; for her fees and costs; for prejudgment and post-judgment interest; and any other relief deemed appropriate by this Court.

11

Dated: June 29, 2026

Respectfully submitted,

**ERIKA VANDERBEND**

/s/ Jeffery W. Styles
Jeffery W. Styles (No. 475264)
Washington Legal Group, LLC
1001 Connecticut Ave NW #1138
Washington, DC 20036
Telephone: (240) 503-1708
jstyles@washlegal.com

Attorney for Plaintiff

12